E-FILED
Friday, 13 November, 2026 04:12:52 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| SARA M. GUDENRATH,<br>Plaintiff,<br><br>v.<br><br>MATTHEW MCCARTY, *et al.*,<br>Defendants. | Case No. 3:25-cv-03277-JEH-RLH |

**Order**

This matter is now before the Court on a Motion to Dismiss filed by Defendants Hughes, Locke, Hammers, Nottingham, Long, Eddy, Case, Mitchell, Pierce, Taapken, Wright, Cabarcas, Clapp, Brainard, Russell, O'Neal, Fairless, Young, Worth, McGinnis, Venturini, Estes, Dietrich, Dawson, Maxey, and Wueste ("IDOC Defendants") (Doc. 91) and a Motion to Dismiss filed by Defendant Sokol (Doc. 96) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' Motions are DENIED.

**I**

On March 6, 2026, Plaintiff filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging several claims arising during her incarceration at Logan Correctional Center ("Logan") and the Joliet Inpatient Treatment Center ("JITC"). (Doc. 41). Plaintiff sued thirty-two individuals, including Illinois Department of Corrections ("IDOC") Director Latoya Hughes, IDOC's former Deputy Director Angela Locke, IDOC's former Chief of Operations Justin Hammers, Logan's former Wardens Jean Marie Case and Melinda Eddy, Logan's current Warden Michael Long, Logan's Assistant Warden of Programs Danielle Mitchell and Cammi Pierce, IDOC's Agency Prison Rape Elimination Act ("PREA")

Coordinator Ryan Nottingham, Logan's PREA Compliance Manager Sarah Taapken, Logan's Backup PREA Compliance Managers Benjamin Estes and Janeen Wright,[1] Logan correctional sergeant Shaun Dawson, Logan correctional officers Matthew McCarty, Jacob Dietrich, and Daniel Maxey, JITC correctional officer "Jane Roe," JITC correctional counselor Cara Wueste, Dr. Risha Fennell, psychiatric mental health nurse practitioner Kevin Rosborough, nurse practitioner Alesha Young, Wexford Health Source Inc.'s ("Wexford") Mental Health Services Director Dr. John Sokol, and members of Logan's PREA Incident Review Team, including Luke Fairless, Chad McGinnis, David Brainard, Shelbi Russell, Tasha Young, Elaine Worth, Araceli Cabarcas, Kit Clapp, Latisha O'Neal, and Abbey Venturini.[2]

On December 4, 2023, Plaintiff Sara Gudenrath, who was diagnosed with autism, post-traumatic stress disorder, and bipolar disorder, was moved to Housing Unit 14 South Wing ("14 South Wing"), a residential treatment unit for prisoners in need of mental health treatment. *Id.* at ¶¶ 5, 88-89. At that time, Defendant McCarty was assigned as a correctional officer on 14 South Wing. *Id.* at ¶ 90. Plaintiff alleges Defendant McCarty began grooming her by bringing gifts, such as gel pens and outside food, and allowing extra out-of-cell time. *Id.* at ¶98. Defendant McCarty also began making sexual and suggestive comments to Plaintiff about her appearance and clothing. *Id.* at ¶¶ 101, 103-104. On or about December 17, 2023, when Defendant McCarty continued to harass Plaintiff, she called a crisis to get a lieutenant to her cell, but Defendant McCarty refused to report it and became angry. *Id.* at ¶ 106. Defendant McCarty followed Plaintiff to her cell and sexually assaulted her. *Id.* at ¶¶ 108-109. With his back to the cell

[1] Defendant Wright also served as the PREA Retaliation Monitor.

[2] Defendants Eddy, Long, Mitchell, Estes, Taapken, Wright, Pierce, and Sokol were also members of the PREA Incident Review Team. The members of the PREA Incident Review Team are collectively referred to as the "PREA Incident Review Team Defendants."

door—the only exit from the cell—Defendant McCarty pulled Plaintiff into his arms with her back against his chest. He began to aggressively touch Plaintiff's breasts and genitalia, put his hand on her breast under her bra, put his other hand under her underwear, and penetrated her vagina with his finger. *Id.* at ¶ 109. Defendant McCarty threatened Plaintiff not to tell anyone. *Id.* at ¶¶ 110, 113.

Plaintiff alleges the IDOC has "a zero tolerance policy for sexual abuse and sexual harassment." *Id.* at ¶ 70. Plaintiff alleges a prisoner cannot consent to sexual contact with prison staff under PREA, Illinois law, and IDOC policy. *Id.* Plaintiff alleges Defendant Taapken, as Logan's PREA Compliance Manager, "was responsible for ensuring the reasonable safety of prisoners at Logan, including preventing sexual abuse and misconduct by officers, developing, planning, and overseeing efforts to address the problem of sexual abuse and misconduct at Logan, and ensuring compliance with PREA regulations and standards for preventing sexual misconduct at the prison." *Id.* at ¶ 41. As Backup PREA Compliance Managers, Defendants Estes and Wright "were responsible for ensuring a continuum of services in the PREA Compliance Manager's absence." *Id.* at ¶ 42. Plaintiff alleges Defendant Wright, in her capacity as the PREA Retaliation Monitor, "was responsible for monitoring the conduct and treatment of individuals in custody who reported sexual abuse or who were reported to have suffered sexual abuse, observing if there were changes that might suggest possible retaliation against individuals in custody, and acting promptly to remedy any such retaliation." *Id.* at ¶ 43.

Plaintiff alleges Defendants Nottingham, Eddy, Long, Case, Locke, Hammers, Hughes, and the PREA Incident Review Team Defendants "were responsible for developing, planning, and overseeing efforts to address the problem of sexual abuse and misconduct at Logan, and for ensuring compliance with PREA regulations and standards for preventing sexual misconduct at the

prison." *Id.* at ¶ 170. Plaintiff alleges that despite reports of staff-on-prisoner sexual assault at Logan—including reports specifically naming Defendant McCarty—Defendants Nottingham, Eddy, Long, Case, Locke, Hammers, Hughes, and the PREA Incident Review Team Defendants failed to take appropriate action to address the known risk of Defendant McCarty's sexual abuse. *Id.* at ¶ 175. Specifically, Plaintiff alleges "these Defendants did not properly investigate the reports against McCarty, direct additional staffing or enhanced monitoring on 14 South Wing, reassign McCarty, or remove him from his position prior to [Plaintiff's] assault." *Id.*

Following the assault, Plaintiff alleges she became depressed and suicidal. *Id.* at ¶ 112. On January 19, 2024, Plaintiff attempted suicide by hanging herself in her cell. *Id.* at ¶ 117. After her suicide attempt, Plaintiff was seen by Defendant Dr. Fennell at Logan's infirmary and reported severe neck pain as a result of her hanging. *Id.* at ¶ 124. Defendant Fennell prescribed Tylenol, but did not conduct further assessments of her brain, neck, or spine. *Id.* at ¶ 125. Plaintiff was transferred to JITC in approximately February 2024 and remained there until June 2024. *Id.* at ¶ 126.

Upon her return to Logan, Plaintiff reported the sexual assault to a nurse in Logan's healthcare unit. *Id.* at ¶ 127. Internal Affairs contacted Plaintiff, but she refused to speak with them out of fear. *Id.* After reporting Defendant McCarty's actions and filing grievances, Plaintiff allegedly experienced retaliation and harassment from Defendants Dietrich, Dawson, and Maxey. *Id.* at ¶ 128. Plaintiff alleges that Defendant Wright, as the PREA Retaliation Monitor, had access to the grievances she filed and was obligated to monitor her and ensure that staff did not retaliate against her. *Id.* at ¶ 146.

On March 13, 2025, Plaintiff attempted to commit suicide a second time after overhearing graphic accounts of Defendant McCarty assaulting other women in

custody. *Id.* at ¶¶ 179, 184. In late April 2025, Plaintiff was transferred to JITC. *Id.* at ¶ 191. JITC divides patients into different groups to separate individuals who do not get along. *Id.* at ¶ 193. Plaintiff alleges she asked Defendants Roe and Wueste not to put her in the same group as inmate "Jane Smith" because she started a fight with Plaintiff in 2024. *Id.* at ¶ 195. Despite her requests, Plaintiff and Smith were placed in the same group. *Id.* at ¶¶ 196-197. In May 2025, Smith physically assaulted Plaintiff, causing severe injuries. *Id.* at ¶ 198.

Plaintiff alleges seven counts in her Amended Complaint, including an Eighth Amendment claim against Defendant McCarty regarding the sexual assault in December 2023 (Count I); an Eighth Amendment claim against Defendants Eddy, Long, Case, Locke, Nottingham, Taapken, Wright, Mitchell, Brainard, Cabarcas, Clapp, Russell, O'Neal, Fairless, Tasha Young, Sokol, Worth, Pierce, McGinnis, Venturini, Estes, Dietrich, Dawson, Hammers, and Hughes for failing to protect Plaintiff from Defendant McCarty (Count II); an Eighth Amendment claim against Defendants Roe and Wueste for failing to protect Plaintiff from inmate Jane Smith at JITC in May 2025 (Count III); an Eighth Amendment claim against Defendants Fennell, Rosborough, and Alesha Young regarding their alleged deliberate indifference to her serious medical needs (Count IV); a First Amendment retaliation claim against Defendants Dawson, Dietrich, and Maxey (Count V); a state law claim for intentional infliction of emotional distress against Defendant McCarty (Count VI), and a state law claim pursuant to the Illinois Gender Violence Act against Defendant McCarty (Count VII).

On August 20, 2026, the Court granted Plaintiff's Motion for Entry of Default Judgment against Defendant McCarty and entered an Entry of Default. (d/e 103, 104). On October 20, 2026, the Court granted Plaintiff's Motion for Default Judgment against Defendant McCarty. (Doc. 114).

On July 20, 2026, the IDOC Defendants filed a Motion to Dismiss Counts II, III, and V, and Defendant Sokol filed a Motion to Dismiss Count II. (Docs. 91, 92, 96).[3] Plaintiff filed a combined Response to Defendants' Motions to Dismiss on September 24, 2026. (Doc. 108). The IDOC Defendants filed their Reply on November 3, 2026. (Doc. 117). Defendant Sokol did not file a Reply.

**II**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 at 556).

---

[3] Defendants Rosborough, Fennell, and Alesha Young filed their Answers and Affirmative Defenses on July 20, 2026. (Docs. 93-95).

**III**

Defendant Sokol and the IDOC Defendants argue the Court should dismiss Count II because Plaintiff failed to plead sufficient factual allegations to establish that they were personally involved in any constitutional deprivation, knew McCarty posed a substantial risk of harm to Plaintiff, and disregarded the risk.

The IDOC Defendants also move to dismiss Count V. Defendants Dietrich, Dawson, and Maxey argue Plaintiff failed to plead sufficient factual allegations to establish that they were aware she engaged in protected First Amendment activity or were motivated to retaliate against her for engaging in protected activity.

Next, the IDOC Defendants move to dismiss or sever Count III, the failure to protect claim against Defendants Wueste and Roe. Defendants argue Plaintiff failed to allege facts showing that Defendant Wueste had any power to protect her from Jane Smith. Alternatively, Defendants argue Count III should be severed pursuant to Federal Rule of Civil Procedure 21 because the claim arises out of transactions and occurrences that are factually distinct from the other claims.

Finally, the IDOC Defendants move to strike or dismiss the request to be awarded "good time credit that Plaintiff has been denied due to the Defendants' actions" from Plaintiff's Prayer for Relief. (Doc. 41 at p. 45). Defendants argue good time credit bears on her sentence, a matter which cannot be decided here.

**A**

Defendant Sokol and the IDOC Defendants argue Plaintiff failed to state a failure to protect claim in Count II. Prison officials violate the Eighth Amendment when they act with deliberate indifference to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The risk of harm to which the prisoner was subjected must be objectively serious. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an

excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. Defendants do not assert that Plaintiff failed to sufficiently allege that she suffered an objectively serious deprivation.

A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citations omitted). Generalized, vague, or stale concerns about one's safety typically will not suffice. *Id*. at 480-81. Prison officials with knowledge of an objectively serious risk cannot be held liable if they responded reasonably, even if the harm was ultimately not averted. *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020).

A plaintiff may also prevail by showing that an objectively serious risk of harm was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" to the point that the risk would have been obvious to any official exposed to the information, and that the official failed to act. *Farmer*, 511 U.S. at 842-43. If a prison official has knowledge of an obvious risk, he cannot escape liability by claiming he did not know the victim was "especially likely to be assaulted by the specific [individual] who eventually committed the assault." *Id*. at 843. A plaintiff asserting this theory of relief must do more than point to isolated incidents where the identified risk came to fruition. *Sinn*, 911 F.3d at 423.

Construed in the light most favorable to Plaintiff, the Court finds that the allegations in Plaintiff's Amended Complaint permit a plausible inference that Defendant Sokol and the IDOC Defendants knew or should have known

Defendant McCarty posed a substantial risk of serious harm to Plaintiff and disregarded the risk. Plaintiff alleges Defendant McCarty targeted multiple women housed on Logan's mental health units. (Doc. 41 at ¶ 149). Plaintiff alleges Defendants Dietrich and Dawson are close friends with McCarty, that Logan officers are local to the area and attended school together, that "nothing is truly 'confidential' at Logan" because "everyone talks," and that Dietrich, Dawson, and others knew of McCarty's patterns of sexual abuse. *Id.* at ¶¶ 129–130, 138, 164, 224–227. Plaintiff alleges Dietrich, Dawson, and Warden Eddy "knew that McCarty was engaging in patterns of sexual abuse, knew of a substantial likelihood that McCarty was sexually abusing" inmates, including Plaintiff, and "failed to take reasonable steps to prevent it from continuing." *Id.* at ¶ 164.

For instance, Plaintiff alleges on or about January 9, 2023, inmate Tiffany Hall reported McCarty's sexual abuse to a Logan mental health worker, a sergeant, and a major. *Id.* at ¶ 150. Ms. Hall informed Logan staff that McCarty had been sexually inappropriate during strip searches, used force in a sexualized way, made sexual innuendos while she showered, and required her to fondle his penis. *Id.* Under IDOC's PREA Administrative Directive, IDOC was required to protect Ms. Hall from McCarty, their report was required to be documented and referred to Internal Affairs, with an initial investigative report to the Warden within twenty-four hours. The Warden was then required to notify the Deputy Director and the Chief of Operations. *Id.* at ¶ 152. Plaintiff alleges this process placed or should have placed Defendants Nottingham, Eddy, Long, Case, Locke, Hammers, Hughes, and the PREA Incident Review Team Defendants on notice of allegations of sexual assault against McCarty nearly a year before Plaintiff's assault. *Id.* at ¶ 153.

Plaintiff alleges McCarty coerced inmate Amanda Daily and her roommate to expose their breasts in exchange for food from outside the prison in September 2023. *Id.* at ¶ 155. Plaintiff also alleges McCarty began grooming another inmate,

Jane Doe, in October 2023 by placing bottles of a milky pink alcoholic liquid in her cell, despite knowing from her placement and conversations that she struggled with alcohol addiction and depression. *Id.* at ¶ 156. On one night, McCarty allegedly followed Ms. Doe into a broom closet without cameras and sexually assaulted her. *Id.* A few weeks after the assault, after experiencing symptoms of a sexually transmitted disease, Ms. Doe reported to a nurse at Logan that she had sexual contact with a correctional officer. *Id.* Under IDOC's PREA Administrative Directive (G)(4)(e), "[a]ny verbal report or observance of sexual activity shall be treated as possible sexual abuse" and "shall be documented on an Incident Report . . . and reported to the facility PREA Compliance Manager." *Id.* at ¶ 157. The nurse who treated Ms. Doe was required to report the sexual abuse to Logan's PREA Compliance Manager. *Id.* Ms. Doe later filed a PREA complaint against McCarty in February 2024. *Id.* at ¶ 158. Plaintiff also alleges there have been numerous incidents of sexual assault at Logan and other IDOC facilities.

As the Deputy Director, Defendant Locke was responsible for overseeing the Logan Warden and policies and procedures, including IDOC's PREA Administrative Directive. *Id.* at ¶ 172. As the Chief of Operations, Defendant Hammers had authority over security operations and staffing allocations across facilities, including authority to direct additional coverage or to remove an officer from 14 South Wing. *Id.* at ¶ 173. As the IDOC Acting Director, Defendant Hughes had control of the agency's operations and personnel, including authority to direct additional coverage or to remove an officer from 14 South Wing. *Id.* at ¶ 174.

Plaintiff alleges that as members of the PREA Incident Review Team, Defendants Sokol, Eddy, Long, Mitchell, Estes, Taapken, Wright, Pierce, Fairless, McGinnis, Brainard, Russell, Tasha Young, Worth, Cabarcas, Clapp, O'Neal, and Venturini, "received ongoing information about staff-on-prisoner sexual abuse at Logan, including the prevalence of allegations and the limited discipline

imposed." *Id.* at ¶ 83. Plaintiff further alleges the PREA Incident Review Team "allows this abuse to perpetuate by forming social environments where this abuse is normalized" and "knew or should have known about an ongoing problem of sexual abuse and misconduct by officers at Logan." *Id.* at ¶¶ 86–87. Plaintiff alleges the PREA Incident Review Team was "on notice of allegations against McCarty nearly a year before [her] assault" based on reports from other inmates housed on Logan's mental health unit who had been sexually assaulted or harassed by McCarty. *Id.* at ¶ 153.

"[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). The doctrine of *respondeat superior* does not apply to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). That is not to say, however, that a supervisor may never be held liable under § 1983 for his or her subordinate's actions. In order for a supervisor to be held liable under § 1983 for the actions of his or her subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.") (internal quotation omitted). "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

Here, the Court finds that Plaintiff's allegations are sufficient to allow a plausible inference that supervisory Defendants Nottingham, Eddy, Long, Case, Locke, Hammers, and Hughes, along with the PREA Incident Review Team Defendants, knew or should have known McCarty posed a substantial risk of serious harm to Plaintiff and "did not properly investigate the reports against McCarty, direct additional staffing or enhanced monitoring on 14 South Wing, reassign McCarty, or remove him from his position prior to [Plaintiff's] assault." (Doc. 41 at ¶ 165-167, 175).

Regarding Defendants Dietrich and Dawson, the IDOC Defendants fault Plaintiff for her reliance on information and belief concerning her allegations related to the correctional officers' subjective knowledge of McCarty's misconduct and her risk of harm. (Doc. 92 at pp. 9-10). However, courts have found that "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 913-14 (7th Cir. 2005) (quoting *Tankersley v. Albright*, 514 F.2d 956, 964 n. 16 (7th Cir. 1975)). Plaintiff alleges Dietrich and Dawson were local to the area, maintained friendships with McCarty, were involved in PREA investigations, witnessed Plaintiff with McCarty after hours without reporting it, and had direct knowledge of McCarty's misconduct. *Id.* at ¶¶ 129-130, 138, 164, 224–227. The Court finds that Plaintiff's allegations against Defendants Dietrich and Dawson are sufficient to allege a plausible failure to protect claim.

What each Defendant knew and what actions they took is a question for discovery. *See Foster v. Ghosh*, No. 11 C 5623, 2013 WL 3790905, at *5 (N.D. Ill. July 19, 2013) ("Discovery is necessary in order to determine [Defendant's] knowledge and actions"). All arguments raised by Defendants in their Motions to Dismiss may be raised again at a later stage in the litigation, once the record is developed,

"and when the applicable procedural rules permit a more fulsome and searching analysis." *See Access 4 All, Inc. v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

Defendant Sokol's and the IDOC Defendants' Motions to Dismiss Count II are denied.

**B**

The IDOC Defendants argue Count V fails to state a First Amendment retaliation claim against Defendants Dietrich, Dawson, and Maxey because Plaintiff failed to plausibly show they took retaliatory action based on the exercise of her First Amendment rights.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) she engaged in activity protected by the First Amendment, (2) she suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take retaliatory action. *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citations and quotation marks omitted).

Plaintiff alleges she engaged in First Amendment activity by reporting Defendant McCarty's sexual assault, filing grievances, meeting with her legal counsel, and filing this lawsuit. (Doc. 41 at ¶¶ 127, 136, 142, 213, 214). The IDOC Defendants do not contest that Plaintiff engaged in First Amendment activity.

Plaintiff alleges her First Amendment activity was the cause and/or motivating factor in Defendants' retaliatory actions. *Id.* at ¶ 283. The chronology of events alleged in her Amended Complaint permits a reasonable inference that the First Amendment activity was at least a motivating factor in Defendants' retaliatory actions. Plaintiff alleges she reported Defendant McCarty's assault to a nurse in summer 2024, triggering an Internal Affairs investigation. *Id.* at ¶ 127. In late summer 2024, Defendant Dietrich—who "did not treat [Plaintiff] this way

prior to her report"—began falsely disciplining her and treating her with unwarranted aggression. Defendant Dietrich allegedly told her to "stop her shit" and that he "knew she was faking it" when she reported pain following a hospital visit. He allegedly removed her from the dining room without justification and handcuffed her while telling her to "stop fake crying" after she reported stomach pain and a leg injury. *Id.* at ¶¶ 131-134.

Plaintiff filed grievances on December 10 and 29, 2024. *Id.* at ¶¶ 136, 142. On December 26, 2024, Defendant Dawson allegedly grabbed her and violently swung her into a van, injuring her leg. As her leg bled, he told her to "woman up, stop crying!" *Id.* He allegedly ignored her requests for medical treatment and told other officers she was faking her seizures and injuries. *Id.* at ¶¶ 139-141.

In late April 2025, Plaintiff was transferred to JITC, but upon her return to Logan in early August 2025, Defendant Dietrich allegedly continued to retaliate against her. On multiple occasions, Defendant Dietrich allegedly placed Plaintiff in segregation and maced her for no apparent reason. In late August 2025, days after Plaintiff met with counsel in the present case, her legal paperwork was ransacked. Soon after noticing her legal documents were missing, Defendant Dietrich allegedly told Plaintiff she "should not get her hopes up" about the lawsuit because she "would not win." On one occasion, Defendants Dietrich and Maxey yelled at Plaintiff and issued a frivolous disciplinary violation, which was later dismissed. Plaintiff alleges Defendant Maxey, who is assigned to her housing unit, has treated her "noticeably worse than other incarcerated individuals" since their first encounter in August 2025. *Id.* at ¶¶ 209-215.

Courts have routinely found that unjustified disciplinary charges, denial of medical treatment, and use of force are deprivations likely to deter a person of ordinary firmness from engaging in protected activity. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015);

*Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Based on the allegations in her Amended Complaint, Plaintiff sufficiently alleges that Defendants Dietrich, Dawson, and Maxey retaliated against her in violation of the First Amendment. The IDOC Defendants' Motion to Dismiss Count V is denied.

**C**

The IDOC Defendants argue Plaintiff failed to state a failure to protect claim against Defendant Wueste in Count III. Defendants assert that Plaintiff does not allege that Defendant Wueste, as a correctional counselor, had any power to make placement decisions or determine where Plaintiff was housed. Alternatively, Defendants argue Count III should be severed from this case under Rule 21, which allows the court to "sever any claim against a party." FED. R. CIV. P. 21. Defendants argue Plaintiff's claim against Wueste arises out of transactions and occurrences that are factually distinct from Plaintiff's primary claims. Defendants argue there is no allegation that the purported inmate assault in 2025 is connected to Defendant McCarty's conduct in 2023 or any other alleged conduct at Logan.

Plaintiff argues Count III states a plausible failure to protect claim against Defendants Wueste and Roe. Plaintiff asserts that severing Count III is unwarranted because her "claims arise from the same series of transactions and occurrences—her ongoing custody in IDOC facilities and IDOC's failure to protect her from harm." (Doc. 108 at p. 19). Plaintiff asserts her transfer to JITC was a direct consequence of the trauma she suffered from Defendant McCarty's sexual assault, her second suicide attempt after she overheard graphic accounts of McCarty's assaults on other women, and her deteriorating mental health. (Doc. 41 at ¶¶ 179-192). Plaintiff also argues the claims in her Amended Complaint present common questions of law regarding the deliberate indifference standard, and trying the claims together promotes judicial economy by avoiding duplicative litigation

regarding Plaintiff's IDOC custody history and the events that led to her transfers to and from Logan.

First, the Court finds that Plaintiff alleges a plausible failure to protect claim against Defendants Wueste and Roe. Plaintiff alleges Defendant Wueste, as a correctional counselor, was "responsible for monitoring the welfare and safety of individuals in custody" and "tasked with maintaining communication with individuals in custody, responding to their concerns and grievances about safety issues, and coordinating with security staff and mental health professionals to address threats to the well-being of individuals in custody." (Doc. 41 at ¶ 60). As a correctional officer, Defendant Roe was responsible for inmates' safety. *Id.* at ¶ 57. Plaintiff alleges that shortly after her arrival at JITC in April 2025, she asked Defendants Wueste and Roe not to be placed in a group with inmate Jane Smith. *Id.* at ¶¶ 191, 194. Plaintiff alleges she told Defendants Wueste and Roe she feared for her safety because Smith had started a fight with her in 2024. *Id.* at ¶ 195. However, Defendants Wueste and Roe did not move Plaintiff or otherwise request that she be moved to a different group. *Id.* at ¶ 197. In May 2025, Smith physically assaulted Plaintiff, causing serious bodily harm. *Id.* at ¶ 198. These allegations are sufficient to allege a failure to protect claim. The IDOC Defendants' request to dismiss Count III is denied.

Second, the Court finds that the claims in Plaintiff's Amended Complaint arise from the same series of transactions and occurrences. A plaintiff may join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2)(A)-(B). Plaintiff alleges she attempted suicide multiple times after Defendant McCarty sexually assaulted her, which ultimately led to her transfer to

JITC to receive further medical treatment in May 2025. While she was at JITC, Defendants Wueste and Roe allegedly failed to protect her from being attacked by inmate Smith. Following the attack, Defendant Alesha Young, a nurse practitioner at Logan, was allegedly deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.[4] In addition, Plaintiff's claims present common questions of law regarding the deliberate indifference standard. Trying the claims together promotes judicial economy by avoiding duplicative litigation. The IDOC Defendants' request to sever Count III is denied.

**D**

In Plaintiff's Prayer for Relief, Plaintiff included a request to be awarded "good time credit that Plaintiff has been denied due to the Defendants' actions." (Doc. 41 at p. 45). The IDOC Defendants argue this request should be stricken under Rule 12(f) or dismissed under Rule 12(b)(6) because the loss of good time must be challenged in an action under 28 U.S.C. § 2254, not a suit under § 1983. (Doc. 92 at p. 20) (citing *Santiago v. Anderson*, 496 F. App'x 630, 633 (7th Cir. 2012); *Selvage v. Hamilton*, No. 7:24-CV-00676, 2026 WL 904793, at *6-7 (W.D. Va. Apr. 2, 2026)).

Defendants cite *Santiago* and *Selvage* in support of striking Plaintiff's request for good time credit. Both cases involved prisoners who directly challenged disciplinary proceedings that revoked their credits. Neither case applies here, as Plaintiff does not allege the loss of good time credit as a result of a disciplinary proceeding. Instead, she alleges that Defendants' constitutional violations destroyed her ability to earn credits she would otherwise have accumulated. Whether credit restoration is ultimately an available remedy is a question for later proceedings, but there is no basis to strike Plaintiff's request from her Prayer for

[4] Defendant Alesha Young did not move to dismiss or sever Count III.

Relief at the pleading stage. The IDOC Defendants' request to strike or dismiss Plaintiff's request for good time credit is denied.

**IT IS THEREFORE ORDERED:**

1) The IDOC Defendants' Motion to Dismiss [91] and Defendant Sokol's Motion to Dismiss [96] are DENIED.

2) Defendants Dietrich, Dawson, Maxey, Long, Eddy, Hammers, Hughes, Case, McGinnis, Cabarcas, Fairless, Locke, Clapp, Taapken, Wright, Estes, Wueste, Venturini, Nottingham, Worth, Brainard, Mitchell, Sokol, Tasha Young, Pierce, O'Neal, and Russell are directed to file their answers to Plaintiff's Amended Complaint within 14 days of this Order.

*It is so ordered.*

Entered: November 13, 2026

s/Jonathan E. Hawley
U.S. District Judge